UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Javece Wilson, | Case No. 21-cv-606-WMW-KMM |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden Fikes, | |
| Respondent. | |

Javece Wilson, Reg. No. 94732-051, 825 N. Christiana Ave., Chicago, IL, 60651, *pro se*

Ana H. Voss and Kristen E. Rau, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, counsel for Respondent

Javece Wilson (hereafter "Mr. Wilson" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Pet., ECF No. 1.]  In his Petition, Mr. Wilson challenges a prison disciplinary decision that resulted in the loss of 14 days of good-conduct time.  For the reasons that follow, the Court recommends that the Petition be denied and this matter be dismissed with prejudice.

**I.     Background**

Mr. Wilson is in the custody of the Federal Bureau of Prisons ("BOP") and is serving a 60-month sentence for possession with intent to distribute 500 grams or more of cocaine.  DeLoia Decl. Ex. B at 2 [ECF No. 8].  At the time he filed the Petition in April 2021, Mr. Wilson was confined at the Federal Correctional Institution in Sandstone,

1

Minnesota ("FCI-Sandstone"). In July 2021, Mr. Wilson was transferred to a Residential Reentry Center ("RRC") in Chicago, Illinois. Notice Address Change [ECF No. 15]; Federal Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Oct. 28, 2021).[1] With the accrual of good-conduct time, Mr. Wilson's anticipated release date is May 22, 2022. DeLoia Decl. Ex. B at 1.

On March 13 2020, a member of the FCI-Sandstone staff issued an Incident Report accusing Mr. Wilson of a BOP Code 296 violation, namely, "Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution (Most Like Circumventing Mail)." DeLoia Decl. ¶9, Ex. D at 1. The Incident Report states that the reporting officer was monitoring emails at approximately 7:00 a.m. on March 13, 2020 and noticed an email from Wilson on January 5, 2020 at 11:31 a.m. to alldayconnect@gmail.com. *Id.* Within the email, "feeling words" were listed, such as:

---

[1] Although Mr. Wilson is no longer in prison, he remains "in custody" because he is subject to the authority of the BOP while an RRC resident. *See Schmanke v. U.S. Bureau of Prisons*, 847 F. Supp. 134, 136 n.3 (D. Minn. 1994) ("Because the Petitioner is still subject to the authority of the Bureau of Prisons, he is still 'in custody' despite his status as a halfway house resident.") (citing *Moreland v. United States,* 968 F.2d 655, 659 (8th Cir.1992) (en banc), *cert. denied,* 506 U.S. 1028 (1992)).

Additionally, though Mr. Wilson was transferred outside this District while this proceeding was pending, the "general rule" is that "habeas jurisdiction continues to lie in the District in which the prisoner was incarcerated at the time that the Habeas Petition was filed." *Id.* (citing *Ex parte Endo,* 323 U.S. 283, 305–06 (1944); *McCoy v. United States Board of Parole,* 537 F.2d 962, 966 (8th Cir.1976); *accord Eubanks v. Wilson*, No. CV 15-2677 (PJS/DTS), 2017 WL 2303506, at *5 (D. Minn. May 1, 2017*), report and recommendation adopted*, No. CV 15-2677 (PJS/DTS), 2017 WL 2303963 (D. Minn. May 25, 2017).

2

guilty, irked, numb, elated, lousy, etc. *Id.* A phone number was attached to each feeling word. *Id.* At the bottom of the email, was a request stating, "can u add to my list also I need another email please because I want to start off new please I know u gave me one but I need a new one." *Id.* The alldaycontect@gmail.com is an "email to text" service in which an inmate mails a specific email address and the email is forwarded on by a third party to a recipient's cell phone as a text message. *Id.* Kevinpaul87@gmail.com was used to forward the messages until January 8, 2020, at which point it switched glenmartin458@gmail.com, listed as "Mercedes Benz" in Mr. Wilson's TRULINCS prison email account. *Id.* The glenmartin458@gmail.com address was used as recently as March 13, 2020, at 6:14 a.m. *Id.* Mr. Wilson had previously been counseled about circumventing mail and email, as documented in a formal warning on February 26, 2020. *Id.* The Incident Report includes a copy of the February 2020 formal warning, as well as the results of a standard message search of Mr. Wilson's email records. *Id.* The email records show "feeling words" in the subject line or body of emails sent by Mr. Wilson on January 3-8, 2020, January 10, 2020, and March 13, 2020. *Id.*

The Incident Report was delivered and read to Mr. Wilson at 6:35 p.m. on March 13, 2020. *Id.* The investigating officer advised Mr. Wilson of his rights in connection with the disciplinary process. *Id.* ¶ 10, Ex. D at 2. Mr. Wilson stated, "this is my email." *Id.* The investigating officer referred the Incident Report to the Unit Disciplinary Committee ("UDC") for a hearing. *Id.*

On March 17, 2020, the UDC conducted an initial hearing on the Incident Report. *Id.* ¶ 11, Ex. D at 1. Mr. Wilson declined to comment at the hearing. Ex. D at 1. The UDC referred the Incident Report to the Discipline Hearing Officer ("DHO") for a hearing and gave Mr. Wilson notice that the DHO hearing would be held at the next available date. *Id.* Exs. E, F. The UDC also advised Mr. Wilson of his rights regarding the DHO hearing and game him an opportunity to request witnesses and a staff representative. *Id.* Exs. E, F. Mr. Wilson requested Correctional Counselor S. Glerum as a staff representative but waived his right to call witnesses. *Id.* Ex. F. On March 20, 2020, Mr. Wilson waived his right to have a staff representative present. *Id.* ¶ 12, Ex. G.

On March 20, 2020, the DHO conducted a hearing on the Incident Report and issued a written report on May 13, 2020. *Id.* ¶ 13, Ex. H. Mr. Wilson received a copy of the DHO Report on June 1, 2020. *Id.* Ex. H at 5. The DHO Report shows that Mr. Wilson waived his right to have a staff representative during the DHO hearing and did not call any witnesses during the hearing. *Id.* Ex. H at 1-2, 4. The DHO Report also includes a written statement from Wilson denying that he circumvented the prison email system. *Id.* ¶ 14, Ex. H at 2.

The DHO found that the Incident Report and email records showed Mr. Wilson "committed the prohibited act of Conduct which Disrupts, Most Like, Abuse of the Mail which Circumvents, Code 299, most like Code 296." *Id.* ¶ 15, Ex. H at 4. The DHO stated that Mr. Wilson's conduct circumvented the email system because he was "not allowed to send an email to one email address using code words with the expectation that

4

the email is being forward to someone else," regardless of whether the phone number associated with a code word was on his approved contact list or not. *Id.* ¶ 16, Ex. H at 4. The DHO explained that BOP policy required Mr. Wilson to add the contact to his list and email them directly through Corrlincs, and that Mr. Wilson circumvented the mail system by going through a company that sent emails for him. *Id.* Ex. H at 4. The sending of email messages "to an unauthorized service who turns these messages into text messages" can "hinder the staff's ability to know who [Wilson is] really contacting in the public and can result in unapproved contact with people in the public." *Id.* Ex. H at 5.

The DHO sanctioned Mr. Wilson to the disallowance of 14 days good conduct time and 60 days of email restriction. *Id.* The DHO's stated reason for the sanctions was that inmates who use the email system in an unauthorized manner "pose a serious threat to institution security and/or the safety of other inmates/self." *Id.* The DHO determined that the sanctions were "sufficient and will serve to deter [Mr. Wilson] from engaging in any such future activities of this nature and encourage better judgment in the future." *Id.*

## II.   Analysis

Mr. Wilson argues that the disallowance of 14 days of good conduct time violated his Fifth Amendment due process rights. He contends that he did not circumvent the prison email system because the BOP monitored his email and permitted his messages to be sent. Pet. at 2; Pet. Add. [ECF No. 1-1] at 1-2; Reply [ECF No. 12] at 1-2. He also

5

argues that the Incident Report should not have included the January 2020 emails because they occurred prior to the date of the Incident Report. Pet. Add. at 2; Reply at 2.

For the first time in his Reply, Mr. Wilson also argues that the DHO used his discretion to impose maximum punishment because of his race. Reply at 2-3. The Court construes this argument as a Fifth Amendment equal protection claim.[2]

Mr. Wilson further argues that the loss of 14 days of good-conduct time constitutes cruel and unusual punishment under the Eighth Amendment. Pet. Add. at 5. He contends that he should have been charged with a 300-level violation rather than the more severe 200-level violation and should have lost less good-conduct time. *Id.* Each of Mr. Wilson's claims is addressed below.

### A. Procedural Due Process Claim

Depriving an inmate of good time credits "as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). The "process constitutionally due" requires prison disciplinary proceedings to conform to the following rules:

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in

---

[2] Also for the first time in his Reply, Mr. Wilson argues that he has a traumatic brain injury and other cognitive impairments that prevented him from understanding the proceedings. Reply at 3. This argument is rejected because the written statement provided by Mr. Wilson during the proceedings shows that he understood the proceedings. *See* DeLoia Decl. Ex. H at 2. Additionally, Mr. Wilson waived his right to have a staff member represent him at the hearing. *Id.* Ex. G.

6

>his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action . . . .

*Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).

The Due Process Clause also demands that "the findings of the prison disciplinary board [must be] supported by some evidence in the record." *Id.* at 951–52. The "some evidence" standard is quite deferential to prison officials. It "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) (quotation marks omitted). "If there is any evidence in the record that could support the finding of the disciplinary authority, then the sanctions comport with due process." *Id.* (quotation marks omitted).

### 1. Procedures Used

The record establishes that the procedures used by the BOP to deprive Mr. Wilson of good conduct time satisfied the constitutionally required procedural protections. First, Mr. Wilson received advanced written notice of the charges against him on March 13, 2020, when the Incident Report was provided to him. DeLoia Decl. ¶ 9, Ex. D. at 1.

Next, Mr. Wilson was given the opportunity to call witnesses and present documentary evidence in his defense. The UDC advised Mr. Wilson in advance of the DHO hearing of his right to call witnesses and present evidence on his behalf. *Id.* ¶ 11, Exs. E, F. At the March 20, 2020 DHO hearing, Mr. Wilson declined to call any

7

witnesses and did not present any documentary evidence, though he did provide a written statement. *Id.* ¶ 14, Exs. F, H at 2.

Finally, Mr. Wilson received a June 1, 2020 written report by the DHO concerning the evidence relied on and the reasons for the disciplinary sanctions. *Id.* ¶ 13, Ex. H. Accordingly, Mr. Wilson received constitutionally adequate procedural safeguards prior to the imposition of discipline.

### 2. Sufficiency of the Evidence

Mr. Wilson argues he did not circumvent the BOP's email monitoring procedures because his emails were monitored and allowed to be sent. This argument is rejected because "some evidence" supports the DHO's finding that Mr. Wilson violated Code 296, which prohibits "[u]se of mail for abuses other than criminal activity which circumvent mail monitoring procedures." *Id.* Ex. A at 49.

The Incident Report and corroborating email records show that Mr. Wilson created a list of code words associated with telephone numbers, then sent emails to a third party service which forwarded the emails as text messages to the phone numbers associated with the code words. *Id.* Ex. D at 1, 5-16. This conduct violated the BOP's policy that inmates "may only communicate with approved persons on their contact lists for the purpose of . . . Public Messaging." *Id.* Ex. I at 16, § 14.10(c). Under the policy, "[i]nmates are subject to disciplinary action for lying and/or providing false or fictitious information regarding a contact (e.g., when complete name is not used; when information

is altered to hide the identity of the contact; and any/all other attempts to mislead reviewing and monitoring staff as to the true identity and contact information)." *Id.* Mr. Wilson's use of a third party forwarding service hindered the staff's ability to monitor his messages to the public. *Id.* Ex. H at 5. This evidence supports the DHO's finding that Mr. Wilson circumvented mail monitoring procedures in violation of Code 296.

Mr. Wilson challenges the supporting evidence by arguing that the March 13, 2020 Incident Report should not have included prior emails from January 2020 because those emails were not associated with the day of the Incident Report. However, there is no requirement that BOP staff monitor emails within 24 hours of when they were sent. *Id.* Ex. I at 20 § 14.10 (j)(4).

Because some evidence supports the decision and the BOP provided Mr. Wilson with all the procedural protections he was constitutionally entitled to receive, his procedural due process claim should be denied.

**B.     Equal Protection**

In his Reply, Mr. Wilson argues that the DHO used his discretion to punish him more severely because of his race. Reply at 2-3. "[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239, 96 S. Ct. 2040, 2047, 48 L. Ed. 2d 597 (1976). Accordingly, Mr. Wilson's allegations of disparate treatment are properly construed as an equal protection claim.

9

"In order to establish such an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (quotation marks omitted). Here, Mr. Wilson has not identified any inmates who were treated differently than him, much less inmates who were similarly situated. Even if he had, the record is devoid of proof that Mr. Wilson received a more severe sanction based on his race. The record does not support a finding that BOP officials engaged in purposeful discrimination. Rather, the record shows that the discipline imposed on Mr. Wilson was based on evidence that he violated the BOP's rules.

For these reasons, Mr. Wilson has failed to show that he was treated differently based on his race.

### C. Eighth Amendment

Mr. Wilson also asserts that the 14 days of lost good conduct time violates the Eighth Amendment's prohibition on cruel and unusual punishment. He contends that he should have been charged with a "Moderate Severity Level" offense under Code 396, rather than a "High Severity Level" offense under Code 296. Pet. Add. at 5.

This claim fails for two reasons. First, as discussed above, some evidence supports Mr. Wilson's Code 296 violation. Second, courts have rejected similar Eighth Amendment claims when the disallowance of good conduct time falls "within the range

of acceptable punishments outlined by the applicable regulations." *Millard v. Hufford*, 415 Fed. App'x 348, 350 (3rd Cir. 2011); *see also Bowen v. Thomas*, Civil No. 1:14-cv-0037, 2016 WL 4385868, at *4 (M.D. Pa. May 20, 2016) ("The denial of good conduct time as a disciplinary sanction does not violate the Eighth Amendment.") (citing *Hanvey v. Pinto*, 441 F.2d 1154, 1155 (3d Cir. 1971) (per curiam)); *Beste v. Anderson*, Civil No. 05-2907 (DSD/FLN), 2006 WL 1581360, at *3 (D. Minn. June 5, 2006) (concluding that loss of 20 days of good conduct time for violation of prison rules was insufficient to state an Eighth Amendment claim).

Here, the available sanctions for a High Severity Level violation include disallowance of 14-27 days of good conduct time. DeLoia Decl., Ex. A (BOP Inmate Discipline Program) at 50 ¶ B.1. Thus, the loss of 14 days of good conduct time for Mr. Wilson's violation fell within the range of permissible sanctions. Mr. Wilson's Eighth Amendment claim should be rejected.

## Recommendation

Based on the foregoing, the Court makes the following recommendations:

1. Mr. Wilson's Petition **[ECF No. 1]** should be **DENIED**.
2. This action should be **DISMISSED WITH PREJUDICE**.

Date: November 10, 2021                    s/ *Katherine Menendez*
                                                      Katherine Menendez
                                                      United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.